UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN A. HARRINGTON,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

Case No. 1:16-cv-898

HON. JANET T. NEFF

# OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-seven years of age on the date of the ALJ's decision. (PageID.54, 82.) He completed high school and was previously employed as a construction worker, detailer, equipment cleaner, and drywall applicator. (PageID.83, 111–112.) Plaintiff applied for benefits on January 15, 2013, alleging disability beginning January 7, 2013, due to bilateral foot, ankle, and leg injuries that caused severe damage as well as back and hip pain, and required reconstructive surgeries. Plaintiff further claimed disability due to severe sleep apnea, very poor vision,

depression, an inability to comprehend detailed written instructions and meanings, and computer illiteracy. (PageID.121–122, 136–137, 206–219.) Plaintiff's applications were denied on July 16, 2013, and Plaintiff subsequently requested a hearing before an ALJ. (PageID.152–162.) On July 25, 2014, Plaintiff appeared with his counsel before ALJ Donna Grit for an administrative hearing at which time Plaintiff and a vocational expert (VE) both testified. (PageID.77–117.) On January 26, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.54–75.) On May 15, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.41–46.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c) 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.20(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since January 7, 2013, the alleged disability onset date. (PageID.59.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) obesity (with weight loss); (2) obstructive sleep apnea; (3) status-post surgery for a left stage II posterior tendon dysfunction and gastroc equinus; (4) an enlarged prostate; (5) mild degenerative changes of the lumbar spine; and (6) depression and anxiety. (PageID.59.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.60–62.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) of the Regulations. The claimant is able to lift and carry a maximum of 20 pounds occasionally and a maximum of 10 pounds frequently. He is able to stand or walk for two hours and to sit for six hours in an eight-hour workday. He cannot use ladders, ropes, or scaffolds and can occasionally climb stairs and ramps. He can perform occasional balancing, stooping, kneeling, crouching and crawling. He can tolerate no exposure to vibration and occasional exposure to extremes of cold and humidity. He can understand, remember, and perform simple tasks and make simple decisions; he

> has the ability to adapt to occasional changes in workplace routines,
> and can have no interaction with the public. The claimant must use
> a cane for ambulation.

(PageID.62.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (PageID.68.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as a machine tender (7,800 regional positions), assembler (14,000 regional positions), and as a packager (6,300 regional positions). (PageID.112–114.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.70.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from January 7, 2013, the alleged disability onset date, through January 26, 2016, the date of decision. (PageID.70.)

## DISCUSSION

### 1. The ALJ's Discussion of the Opinion Evidence.

On May 15, 2014, Ms. Heather Visser, a limited licensed marriage and family therapist, completed a mental RFC questionnaire worksheet concerning Plaintiff's limitations. (PageID.532–535.) Ms. Visser noted she had been seeing Plaintiff twice a month since August 2013, and she had diagnosed Plaintiff with an adjustment disorder with a depressed mood, and with a social anxiety disorder. (PageID.532.) While she noted that Plaintiff's response to therapy had been positive, she noted that Plaintiff "will likely always struggle with chronic physical pain and impairments which likely will have an effect on his mental health." (PageID.532.) The therapist then offered her opinion regarding Plaintiff's limitations in twenty-five listed abilities. For fifteen

5

of the listed abilities, the therapist found Plaintiff was unlimited or limited, but satisfactory. Three other abilities were marked seriously limited, but not precluded. But the therapist found that Plaintiff had no useful ability to function in the ability to perform at a consistent pace without an unreasonable number and length of rest periods, and was unable to meet competitive standards in the ability to complete a normal workday and workweek without being interrupted by his symptoms, the ability to deal with normal work stress, the ability to deal with the stress of semiskilled and skilled work, and the abilities of interacting appropriately with the general public, traveling to an unfamiliar place, and using public transportation. (PageID.534–535.) Finally, were he to work, the therapist indicated she would expect that Plaintiff's impairments and treatment would cause him to be absent from work more than four days a month. After summarizing the opinion, the ALJ assigned it little weight because:

> Such extreme limitations are not even consistent with the initial August 2013 evaluation that indicated mental status exam findings of being oriented, having an appropriate appearance, a flat expression, normal speech, a depressed mood but composed affect, good judgment, unremarkable thought content, normal memory, normal perception, normal impulse control, and average intelligence (Exhibit 22F). Thereafter, the claimant's mental impairments and functioning improved with outpatient counseling treatment. For these reasons, Ms. Visser's opinion is not consistent with the type, frequency, and outcome of the mental health treatment. The record consistently reflects an absence of suicidal ideation. This opinion is also not consistent with the April 2013 consultative psychological evaluation.

(PageID.67.) Plaintiff claims that the ALJ erred in evaluating this opinion.[2] The Court disagrees.

---

[2] Plaintiff also claims the "ALJ erred by assigning partial, little, or no weight to every piece of opinion evidence in the record[.]" (PageID.660.) Beyond this initial statement, however, Plaintiff only meaningfully discusses Ms. Visser's opinion. Accordingly, Plaintiff has waived any argument regarding the ALJ's evaluation of the other opinion evidence.

6

As a therapist, Ms. Visser is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), (d)(1) and 416.913(a), (d)(1) (2013). There is no "treating therapist rule," and the opinion of a therapist is not entitled to any particular weight. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06–3p, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). The opinions of a therapist fall within the category of information provided by "other sources." *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2013). The social security regulations only require that information from other sources be "considered." SSR 06–3p, 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913 (2013)); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

Despite this highly deferential standard, Plaintiff claims the reasons provided by the ALJ "do[] not hold up under scrutiny or are insufficiently articulated." (PageID.661 (citing *Session v. Comm'r of Soc. Sec.*, No. 1:15-cv-4, 2015 WL 87572516, at *4 (W.D. Mich. Dec. 14, 2015))). Plaintiff has not met his burden of showing the ALJ's reasoning is unsupported by substantial evidence. Indeed, Ms. Visser's mental status examination on August 21, 2013, revealed mostly normal results. Plaintiff was oriented and had an appropriate appearance. While he had a depressed mood, his affect was composed, his consciousness was normal, he had good judgment, unremarkable thought content, and had a normal stream of thought, memory, perception, and impulse control. (PageID.548.) Contrary to Plaintiff's assertion, these normal findings are extremely relevant to the opinion the therapist would later make and, moreover, are inconsistent with that opinion. The ALJ did not "play doctor" in noting the inconsistency.

Furthermore, the ALJ correctly noted that Plaintiff's condition appeared to improve with counseling. On October 2, 2013, Ms. Visser noted that Plaintiff felt that counseling helped him deal with his chronic pain. He had helped his uncle fix a car part and he felt good about himself. (PageID.546.) On October 17, 2013, Plaintiff reported he had socialized with some old coworkers. He also went to a campsite with some friends. (PageID.545.) On January 9, 2014, he had made good progress. He had been smiling more. (PageID.544.) On February 13, 2014, he reported feeling more positive over the last few weeks. He had more energy. (PageID.542.) On April 16, 2014, Ms. Visser again noted Plaintiff had made good progress. He was continuing to find value in the work he was doing around the house. (PageID.541.) By May 29, 2014, he had lost twenty pounds and hoped to lose a total of fifty. He had gone to the store with his wife and then again with his daughter. (PageID.539.) By July, he reported that he had reduced his negative thoughts about himself from 75% of the time to only 45%. (PageID.537.) The ALJ's conclusion, therefore, that the therapist's opinion is inconsistent with her records showing continued improvement enjoys overwhelming support.

Finally, Plaintiff claims the ALJ erred by finding that the opinion was inconsistent with a June 2013 consultative examination. Plaintiff notes the ALJ found the examiner's opinion was vague and assigned it only little weight.[3] Even assuming the ALJ erred in finding Ms. Visser's opinion to be inconsistent with this evaluation, the Court finds such error to be harmless on this record. The ALJ's determination that Ms. Visser's opinion was inconsistent with her treatment records was more than an adequate basis to discount her "other source"

---

[3] Plaintiff correctly notes that the ALJ appears to have made a scrivener's error by stating the record was dated in April.

opinion and, as discussed above, is supported by substantial evidence. Accordingly, Plaintiff's first claim of error is denied.

### 2. The ALJ's RFC Evaluation.

In her second claim of error, Plaintiff contends that the ALJ's RFC determination is unsupported by substantial evidence. The Court again disagrees.

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545, 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404. Subpt. P, App. 2 § 200.00(c). With respect to mental abilities, the regulations provide:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.94(c). The evidence of record in this matter does not support Plaintiff's contention that his impairments impose restrictions greater than those found by the ALJ.

Plaintiff begins this claim of error by contending the ALJ violated SSR 96–8p by failing to provide a narrative discussion of his conclusions regarding Plaintiff's RFC. (PageID.663.) According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7

9

(SSA July 2, 1996). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source . . . explain why the opinion was not adopted." *Id.*

The portion of the ALJ's decision dealing with the RFC assessment spans seven pages and includes a summary of Plaintiff's testimony, the ALJ's credibility analysis, a discussion of the medical evidence, and a summary of the opinion evidence. At the end of the ALJ's credibility analysis, the ALJ noted that:

> The record in its entirety, including the course of medical treatment, objective findings, mental status examination findings, and the opinion evidence, is not persuasive or convincing of a conclusion of disability. Although the claimant has limitations in the ability to perform both physical and mental work activities, he is still capable of performing a reduced range of light exertion work as described in Finding #5 of this decision. There has been no 12-month period since January 7, 2013, or any period that is expected to last 12 months, in which the claimant did not have this residual functional capacity.

(PageID.66.) The Court finds this narrative, combined with the detailed discussion of the medical evidence, to pass muster under SSR 96–8p's narrative discussion requirements.

Moreover, there is plainly substantial evidence to support the ALJ's RFC decision. Plaintiff contends there is no indication as to how the ALJ concluded that he was capable of standing or walking two hours in an eight-hour workday or how he had no restrictions regarding his ability to work with coworkers and supervisors. (PageID.663–664.) He also claims the ALJ should have found that he required the use of a cane not just for ambulation, but also for balancing, which he

10

notes the VE testified would preclude all work under the given hypothetical. (PageID.664.) Additionally, he claims the ALJ should have included a limitation for his absenteeism, and also failed to account for his severe impairments of sleep apnea and enlarged prostate. (PageID.664.) Despite this litany of complaints, Plaintiff has failed to demonstrate the ALJ's RFC decision is not supported by substantial evidence.

Plaintiff's ability to stand and walk was squarely addressed by Dr. Larry Jackson who concluded that Plaintiff could stand and/or walk for six hours in an eight hour workday. (PageID.130–131, 145-146.) The ALJ gave the opinion only partial weight, noting that the record called for more restrictive limitations regarding Plaintiff's ability to stand and walk, including the use of a cane. (PageID.66.) This was entirely appropriate. The ALJ is ultimately responsible for determining a claimant's RFC, *see Coldiron v. Comm'r of Soc. Sec.*, 371 F. App'x 435, 439 (6th Cir. 2010), and the ALJ did not err in noting that the record called for further restrictions on Plaintiff's ability to stand and walk. Furthermore, Plaintiff has not pointed to record evidence indicating that he is incapable of standing or walking for a total of two hours in a workday. Plaintiff does contend that he requires the use of a cane to balance, not just ambulate. But Plaintiff points only to his testimony (which the ALJ found not entirely credible) for support. His lay interpretation of records stating he experiences swelling with dependent positioning is insufficient to demonstrate the ALJ's decision is unsupported by substantial evidence. Furthermore, the consultative examiner's report that Plaintiff can stand with assistance does not support relief. (PageID.613.) The note makes no mention of a cane, and the examiner's report indicates that Plaintiff could get on and off an examination table without difficulty, and had only mild difficulty hopping on the right foot. (PageID.616.) In the examiner's conclusion section, the only mention of a cane was in the context

11

of Plaintiff's ability to ambulate. No mention of the use of a cane to balance was made. (PageID.619.) Accordingly the Court finds no error here.

Plaintiff next claims the ALJ should have included a limitation for work with coworkers and supervisors, as well as a limitation for his absenteeism. (PageID.664.) Plaintiff points to no records indicating he was further impaired in his ability to work with others than as found by the ALJ. To the contrary, the record shows that Plaintiff was able to socialize with his old coworkers. Likewise, Plaintiff points to no records indicating he would be absent from work. To the extent that Plaintiff relies on Ms. Visser's report, the Court has previously found that the ALJ's decision to accord only little weight to the opinion is supported by substantial evidence.

Finally, Plaintiff contends the ALJ failed to include limitations for his severe impairments of sleep apnea and enlarged prostate. Plaintiff's claim is without merit. The ALJ expressly stated her obligation to consider all of Plaintiff's impairments when evaluating Plaintiff's RFC. (PageID.58.) The ALJ went on to note she had considered "the entire record" and "all symptoms." (PageID.62, 64.) Moreover, Plaintiff fails to demonstrate that any additional restrictions are required. (PageID.664.) Plaintiff provides no authority in support of his assertion that an ALJ must specifically delineate which restrictions account for which impairment. Moreover, the finding of a severe impairment at step two is a "de minimis" hurdle and "says nothing as to its limiting effects." *Simpson v. Comm'r of Soc. Sec.*, No. 1:13–cv–640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). Here, it appears the ALJ gave Plaintiff the benefit of the doubt by finding his sleep apnea and enlarged prostate

constituted a severe impairment at step two, but found that Plaintiff's complaints about these conditions were not supported by the record. The Court finds no error here.[4]

### 3. The ALJ's Credibility Evaluation.

At the administrative hearing, Plaintiff testified that his limitations exceeded those that were ultimately accounted for by the ALJ. Among other things, he testified that he could not work because of pain in his legs, feet, hips, and back. (PageID.90.) This pain also negatively impacted his ability to focus. (PageID.90.) He could only sit at any one time for fifteen minutes and stand for approximately the same time. (PageID.95.) He further thought he could only walk for twenty or thirty steps before needing to rest. When asked whether he had any problems with bending over, Plaintiff responded "[m]ost definitely." (PageID.95.) When asked whether he could engage in other activities like crawling, crouching, and kneeling, he testified that he would not do those activities. (PageID.96.) Finally, Plaintiff testified that he would elevate his feet or lie down to reduce the pain in his hips and back. (PageID.98.) He testified he would do so five or ten times a day, each for a period of fifteen to thirty minutes. (PageID.98–99.) The ALJ found that Plaintiff's testimony was only "partially credible":

> After the immediate post-operative period, generally the physical examination findings do not show significant swelling [sic] lower extremity swelling. This negatively affects the credibility of the allegation that the claimant has significant lower extremity swelling or requires the need for frequent elevation of his leg. The orthopedic and other medical treatment following the surgery is not indicative of any combination of disabling impairments or limitations. The objective findings include August 2014 x-ray findings of the bilateral hips that reflect no significant degenerative changes and no acute fractures or other abnormalities. In addition, the lumbar spine films

---

[4] Plaintiff makes an additional argument regarding the ALJ's treatment of the June 2013 consultative evaluation. But even assuming Plaintiff's argument is correct, Plaintiff admits that the error is "not sufficient cause for remand." (PageID.665.) Hence the Court need not address it.

> show only mild degenerative changes. The bilateral hip x-rays from November 2014 had unremarkable findings. While the claimant has some mild gait changes that may cause some hip and back pain (Exhibit 24F) the objective findings negatively impact the claimant's credibility and are inconsistent with his stated limitation of sitting fifteen minutes related to hip pain, but are consistent with his statement that bending is now a problem.

(PageID.65-66.) Plaintiff claims the ALJ's credibility analysis is unsupported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence

14

fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ's credibility analysis begins by stating that after Plaintiff's immediate post-operative period, physical examination findings do not show significant lower extremity swelling. But on a progress summary report dated five months after Plaintiff's surgery, it was reported that Plaintiff had continued edema with dependent positioning. (PageID.480.) And on August 26, 2014, the consultative examiner found reduced range of motion in Plaintiff's right and left ankles. (PageID.618.) Accordingly, this reason articulated by the ALJ is not supported by substantial evidence. Next, the ALJ states that "the orthopedic and other medical treatment following the surgery is not indicative of any combination of disabling impairments or limitations."

15

(PageID.65–66.) The only objective records referenced by the ALJ are those regarding Plaintiff's hips and lumbar spine. But while Plaintiff did allege hip and back pain, he never alleged any injury to those areas. Rather as the consultative examiner found, and the ALJ acknowledged, this pain appeared to be compensatory for Plaintiff's poor gait and posture due, in turn, to Plaintiff's bilateral lower extremity impairments. (PageID.63.) Thus, these objective records appear to be of little value. Finally, the ALJ found that Plaintiff's complaints were consistent with his statement that bending was not a problem. As is evident from the above summary of Plaintiff's complaints, however, Plaintiff in fact stated that he "[m]ost definitely" did have problems with bending. (PageID.95.)

An ALJ "must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the path of [her] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). On this record, the Court is unable to trace the path of the ALJ's reasoning. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should reevaluate Plaintiff's credibility.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also Brooks*, 531 F. App'x at 644. Evaluation of Plaintiff's claim requires the resolution of certain factual disputes which this Court is neither competent nor

authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED** and the matter **REMANDED** for further factual findings including, but not necessarily limited to, further evaluation of Plaintiff's credibility.

A separate judgment shall issue.


Dated: June 22, 2017                                               /s/ Janet T. Neff
                                                                   JANET T. NEFF
                                                                   UNITED STATES DISTRICT JUDGE